**Elmer C. MAY, Plaintiff–Appellant,**

v.

**The HOUSTON POST PENSION PLAN and the Houston Post Company, Defendants–Appellees.**

No. 89–2249.

United States Court of Appeals, Fifth Circuit.

April 26, 1990.

---

Brad Beers, Tom Alexander, Alexander & McEvily, Houston, Tex., for plaintiff-appellant.

R. Michael Moore, Fulbright & Jaworski, Houston, Tex., for defendants-appellees.

Before BROWN, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

At the time of this suit, Elmer C. May (May) had been an employee of the Hous-ton Post Company (Post) for over ten years. For many years, the Post maintained a defined benefit pension plan, which was amended on several occasions. In accordance with a stock purchase and sales agreement between H & C Communications, Inc. and Toronto Sun Holding Corporation effective December 1, 1983, the Toronto Sun Holding Corporation purchased all of the issued and outstanding stock of the Post. The portion of the H & C Communications Pension Plan attributable to Post employees who continued their employment with the Post as of December 1, 1983 was assumed and amended, restated and continued separately and independently from the H & C Communications Pension Plan. When H & C Communications, Inc. sold the Post to the Toronto Sun Holding Corporation, the Toronto Sun Holding Corporation agreed and covenanted to establish a defined benefit pension plan for the benefit of all participants of the Plan who continued as employees of the Post following the sale to the Canadians.

Through its contract with the Toronto Sun Holding Corporation, H & C Communications agreed to transfer or cause to be transferred to the defined benefit pension plan sufficient assets to fund accrued benefits through the closing date of the sale no less in value than the benefits through such date provided by the Plan. The Plan as amended and restated effective December 1, 1983, specifically provided that the Employer (Post) reserved the right to terminate the Plan; upon termination, the Post shall receive all amounts from the Plan trust fund that may remain after satisfaction of all liabilities of the Plan.

In December, 1987, the Post was sold to MediaNews Holdings, Inc. On November 23, 1987, pursuant to the provisions of the Plan, the Post executed an "Amendment, Freeze and Termination Agreement to the Houston Post Pension Plan" which effectively froze the Plan and provided for its termination effective January 31, 1988. The Post notified the Pension Benefit Guaranty Corporation (PBGC) and the Internal Revenue Service (IRS) of its intent to ter-

minate the Plan. The filings with the IRS and PBGC showed that the Plan had residual assets, after satisfaction of all liabilities, in the amount of approximately $1,683,574.00. Those residual assets would revert to the Post.

May contended as a matter of law that he was entitled to recover all benefits to which he would have been entitled had he worked until his normal retirement date.[1] The District Court entered summary judgment in favor of the Post and the Plan and ordered that they be reimbursed for their costs and imposed on counsel, but not on May, attorneys fees as a sanction pursuant to F.R.Civ.P. 11 in the amount of $7,500.00.

██ May initially argued that he was entitled to recover benefits for future service upon termination of the Plan consistent with ERISA.[2] At that moment he was upon pretty substantial ground in the holding of the Eleventh Circuit panel decision in *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.*, 817 F.2d 1528 (11th Cir.1987). Unfortunately for May (and his counsel), the Eleventh Circuit in the now rare occasion of review by the Court *en banc* did that and reversed the panel decision. 848 F.2d 1164 (*en banc* 11th Cir.1988). Although intact at the time he filed his initial complaint, May's claim was exterminated when the Eleventh Circuit, sitting *en banc*, expressly vacated this panel decision.

In so ruling, that court conducted a detailed analysis of ERISA and IRS regulations and concluded that claims based on unaccrued and unearned benefits were not cognizable under the allocation provisions of either ERISA or the Internal Revenue Code. *See* 4044, 4044(d), and 403(c) of ERISA, 29 U.S.C. 1344, 1344(d), and 1103(c), and 401(a)(2) of the Internal Reve-

nue Code, 26 U.S.C. 401(a)(2). The court recognized that federal guidelines are clear that "an employer must satisfy only the employees' *accrued* benefits under the plan—not benefits that would accrue in the future if the employees continued to work for the employer [or successor employer] after the plan terminates—before a reversion of the residual assets is permitted." 848 F.2d at 1172. *See also In re Pension Plan for Employees of Broadway Maintenance Corp.*, 707 F.2d 647 (2d Cir.1983); *PBGC v. Heppenstall Co.*, 633 F.2d 293 (3d Cir.1980).

██ Although—if we had jurisdiction of counsel's appeal there might be great doubt about the validity of the sanctions imposed—but alas for counsel, we have no jurisdiction to review the appeal of the District Court's award of sanctions because the Notice of Appeal in this case does not clearly name May's counsel as an appealing party. In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court enunciated the requirements for a notice of appeal and the consequences for any defect in that notice. In that case, one of the petitioners' names was omitted from the notice of appeal due to a clerical error. The Court held that, based on Fed.R.App. Proc. 3(c), which provides that a notice of appeal "shall specify the party or parties taking the appeal," the failure to name a party in a notice of appeal constitutes a fatal defect. In so holding, the Court realized the potential harshness of this rule but rejected the petitioners' argument that a "harmless error" analysis should be applied to defects in a notice of appeal. Instead, the Court stated that "this argument misunderstands the nature of a jurisdictional requirement: a litigant's failure to clear

---

1. May was 53 years old on January 31, 1988 when the Plan was to effectively terminate, and was to receive over fifty thousand dollars in accrued benefits for his employment up to that time. At dispute is the *future* amount he would have received were the Plan not to terminate and had he worked until normal retirement age.

2. May also contended, as a separate and distinct matter, that he was entitled to receive, as a "third-party beneficiary" to the contract be-

tween H & C Communications, Inc., and the Toronto Sun Holding Corporation, any amounts which reverted to the employer after the Plan was terminated and after all accrued benefits were distributed. Whatever merit this cause of action might have, as a common law contract claim it is preempted by ERISA. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

a jurisdictional hurdle can never [or almost never, the Court will some day likely hold —] be 'harmless' or waived by a court." *Id.*, 487 U.S. at 317 n. 3, 108 S.Ct. 2409 n. 3.

Accordingly, the summary judgment against May is affirmed. The appeal from imposition of sanctions is dismissed for want of jurisdiction.

DISMISSED IN PART AND AF-FIRMED IN PART.